Cite as 2022 Ark. App. 330

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-22-89

|  |  |
|---|---|
| ANGEL MORPHEW<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered September 14, 2022<br><br>APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64JV-19-9]<br><br>HONORABLE, TERRY SULLIVAN JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Angel Morphew appeals from the Scott County Circuit Court's termination of her parental rights to her children, A.M. (DOB: 09-29-05) and B.M. (DOB: 02-15-08).[1] On appeal, Morphew argues that the termination order was not supported by sufficient evidence. She challenges only the circuit court's best-interest finding. Specifically, she argues that in light of her progress, she should have been granted more time to reach reunification. We affirm.

The case began on January 31, 2019, when the Arkansas Department of Human Services (DHS) removed the children from Morphew's home due to her incarceration and

---

[1]The circuit court also terminated the parental rights of the children's fathers, but neither father appealed. As such, this appeal pertains only to Morphew.

because she left the children with an inappropriate caretaker. Prior to the removal, DHS received reports regarding sexual and substance abuse. On March 26, the children were adjudicated dependent-neglected due to inadequate supervision by Morphew. She was ordered to comply with the case plan; maintain stable housing; maintain sufficient income; maintain transportation; submit to random drug screens; complete a drug-and-alcohol assessment and comply with the recommendations; complete parenting classes; participate in counseling; complete a psychological evaluation and comply with the recommendations; resolve all criminal issues; refrain from illegal activity; achieve and maintain sobriety; keep DHS informed of her contact information and significant life events; and visit her children.

A review hearing was held on July 23, wherein the court found that Morphew was not in compliance with the case plan and was currently incarcerated due to a probation revocation in Oklahoma. The court noted that prior to her incarceration, she did not have stable and appropriate housing, she did not have stable income or transportation, she failed to comply with individual counseling, and she had not attended the recommended intake or outpatient treatment.

On October 8 at the first permanency-planning hearing, Morphew remained incarcerated in Oklahoma, but the court continued the primary goal of the case as reunification with a concurrent goal of adoption. At the second permanency-planning hearing on January 28, 2020, the court found that Morphew had completed some services while in jail and had been released from incarceration in November 2019. The court changed the goal of the case to adoption. DHS filed a petition for termination, but a couple of months

later, an agreed order was entered continuing the termination hearing and granting Morphew additional time for reunification. The order noted that Morphew had recently made "significant progress." Morphew had obtained a home, a driver's license, transportation, and employment; she was also attending parenting classes, beginning counseling, attending visitation, and participating in drug court. A continuance was again entered extending the hearing to October 27.

On September 30, DHS filed an amended petition for termination of parental rights, but it again requested to withdraw the petition and treat the October 27 hearing as a permanency-planning hearing. In a review order entered in April 2021, the court changed the goal to adoption, and DHS filed its final petition for termination of parental rights. The court conducted a termination-of-parental-rights hearing on August 24.

Tehrina Means, the caseworker from November 2020 to July 2021, testified that Morphew had made progress, but she was not in compliance with the conditions of drug court because when Means showed up for a home check, Morphew had a felon in her home. Means testified that Morphew had not demonstrated that she learned from the case plan and that she could protect the children because she continues to associate with felons.

Jackie Young, Morphew's drug-court officer, testified that Morphew was currently in community correction for ninety days on a drug-court violation for failing to report, not completing community service, and failing to pay toward her fine. Young testified that if Morphew continues her noncompliance with the conditions set forth by drug court, she could face a one-year sanction or termination (she had already done a thirty-day sanction).

Young testified that if Morphew were terminated from the program, she is facing a ten-year sentence. Young testified that Morphew would be released in November. She explained that there are four phases for drug court; Morphew was currently in phase II, but upon her release, she will be back in phase I.

Tammy Biggs, the children's therapist, testified that she stopped doing family therapy because it was not beneficial. Specifically, Biggs stated Morphew was "manipulative" during sessions.

Deborah Tatum testified that she had been the current caseworker for about four weeks. She stated that the children cannot go home with Morphew because Morphew is currently incarcerated and that it is in the best interest of the children to terminate Morphew's parental rights. Gayla Baker, the DHS supervisor, testified that Morphew is not suitable to care for her children due to her history and drug-court issues.

Katherine Summit testified that she has been Morphew's friend for about four or five years. She said, "I know she's made her mistakes but we've all made our mistakes." She knew Morphew loves her daughters and did not believe her parental rights should be terminated.

Morphew testified that she is currently working a therapeutic program in community correction. She asked for more time because she has "been working on everything [asked of her]." She testified that she has about nine months left before she phases out of drug court. At the conclusion of the hearing, the court granted DHS's petition to terminate Morphew's parental rights. This appeal followed.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing by clear and convincing evidence of one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Phillips v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 256, at 10.

Morphew challenges only the potential-harm prong of the circuit court's best-interest finding. In terminating Morphew's parental rights, the circuit court found that the children would be subjected to potential harm due to Morphew's failure to comply with the case plan and her instability. Morphew argues that she made sufficient progress such that she did not pose such a potential danger to her children as to warrant the extreme measure of termination of parental rights. Alternatively, she argues that she should have been granted additional time.

In assessing the potential-harm factor, the court is not required to find that actual harm would ensue if the child were returned to the parent or to affirmatively identify a potential harm. *Krecker v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 537, at 12, 530 S.W.3d 393, 401. The potential-harm analysis is to be conducted in broad terms. *Id.*, 530 S.W.3d at 401. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. *Id.*, 530 S.W.3d at 401.

Morphew's incarceration throughout the case supports the best-interest finding. Morphew had been incarcerated multiple times since the case opened. At the time of the termination hearing, she was incarcerated due to her second sanction in the drug-court program. Once Morphew was released from her current incarceration, she would have to start the drug-court program from the beginning in phase I of IV. According to testimony, the drug-court program should take only eighteen months; however, Morphew had been in the program for that long but was still only in phase I. If her noncompliance with the program continued, she would be terminated from drug court and face a sentence of ten

6

years' incarceration. This evidence demonstrates that Morphew's behavior over the course of this twenty-eight-month long case does not show enough stability to render the circuit court's potential-harm finding clearly erroneous.

On appeal, Morphew admits that she did not have flawless compliance but that she did what was necessary to reunify with her children: she had a home, income, and transportation and had achieved sobriety. Morphew essentially asks us to reweigh the evidence and overlook the fact that she failed to achieve stability demonstrated by her repeated incarcerations and failure to resolve all criminal issues. *See Phillips*, 2022 Ark. App. 256, at 10 ("Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child.").

Morphew directs us to *Ivers v. Arkansas Department of Human Services*, 98 Ark. App. 57, 250 S.W.3d 279 (2007), and *Rhine v. Arkansas Department of Human Services*, 2011 Ark. App. 649, 386 S.W.3d 577, where this court reversed the termination order despite the parent having a few lapses in judgment late in the case. These cases are distinguishable because Morphew's behavior was more than a "lapse in judgment." Rather, she was incarcerated several times throughout the case, had not resolved her pending criminal charges, and was not successful in family therapy. Accordingly, while she may have achieved sobriety, she had not achieved stability. We agree with the circuit court that A.M. and B.M.'s need for permanency and stability overrides Morphew's request for additional time to improve her circumstances.

Affirmed.

HARRISON, C.J., and WHITEAKER, J., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.